U. S. DISTRICT COURT
Eastern District of Louisiana

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED  NOV - 7 2005

LORETTA G. WHYTE
Clerk

BRYAN ANTHONY THOMAS, SR.        §
        Petitioner,        §
                §    Crim. No. 00-CR-287
VS.        §    Civil. No. 05-CV-1831
                §
                §    SECTION "F"
UNITED STATES OF AMERICA,        §
        Respondent.        §
                §

## MOTION FOR RECONSIDERATION OF ORDER AND JUDGMENT OF JUNE 22,2005

Now comes Bryan A. Thomas, pro se, pursuant to F.R.C.P. 59(e) to make additional findings in conformity with Dretke v. Haley, 124 S. Ct. 1847, at 1849(2004). Petitioner respectfully seeks reconsideration of the above Judgment and begs this Honorable Court's indulgence under the "less-stringent standard" of this Court and in the interest of fundamental fairness, enunciated in Haines v. Kerner, 404 U.S. 519(1972). In support of states as follows:

### BRIEF

The District Court may have compulsively been led to error by the prose Petitioner, in the Petitioner's Direct Appeal "that Thomas waiver was entered knowingly and voluntarily." Thereby, refusing to consider the §2255 arguments. (See Attachment "B" pg. 2). Due to a failure to truely articulate "claims that survive his waiver of appeal." (Attachment "A" pg. 2).

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc. No._____

The Petitioner ignorantly took for granted that the Court familiar with the three (3) instant exceptions to the "waiver was of appeal" created and/or revealed when the Supreme Court announces a new rule of law.

The Petitioner §2255 Motion sought retroactive application of Shepard v. United States, 544 U.S.____, 161 L.ed. 2d 205, 125 S.Ct., (2005; United States v. Booker, ____, U.S. ____, 125 S.Ct. 738(2005); and Blakely v. Washington, 542 U.S. ____, 124 S.Ct. 2531, 2537(2005), new Statutory Maximum Clasification to the Federal Sentencing Guidlines.

## Statutory Maximum

After the Supreme Court's decision in Blakely v. Washington, the term "statutory maximum" took on something of a different meaning: the maximum guideline sentence authorized by jury-proven or admitted conduct, Id. at 2537. Booker applied the hokdings of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348(2000) and Blakely to invalidate certain key provisions of the U.S.S.G. The Supreme Court held a sentence violates the Sixth Amendment when (1) the sentence is based on a fact neither admitted by the defendant nor found by a jury, (2) the fact is not found beyond a reasonable doubt. Booker 125 S.Ct. 738, 748, 49(2005)(Stevens, J.).

---

*1 The Petitioner is unaware of any Circuit as of yet to hold Shepard v. United States to be a new rule.

Therefore, the statutory maximum under 18 U.S.C. § 1956(a)
(1) (A) (i) of 20 years would fail post- <u>Booker</u> as the Supreme
Court has now made clear that facts alleged in the indictment
but not proven to a jury beyond a reasonable doubt (or admitted
to) are not sufficient to support a sentence enhancement under
a mandatory guideline system. See <u>Booker</u>, at 756.

Count 3 sentencing provision under U.S.S.G. § 2S1.1 (a)(1)
Base Offense Level 23 for a Laundering Monetary Instrument of
an exclusive $10,000. sum carries a 46-57 month sentencing
range. The indictment is devoid of an instrument of $100,000,000.
to apply the Court's 20 year statutory maximum. Count 91 contains
a $276,324.62 instrument, but falls far short of $100 million.
(Attachment "C" pg. 12) Therefore, the Court's finding on page
3 that "the defendant was aware of the sentence that he could
receive is inaccurate. (Attachment "D")

Furthermore, Counts 4-161 are all factually insufficient
as a matter of criminal pleading. Such **skimpy** assertations can
never be said to comply with Fed.R.Crim.P.7(C)(1) or allege the
crime. It may have been permissible to identify Counts 4-161
as overt acts. However, being identified as Counts, this section
of the indictment is defective on its face and fails to permit
a defendant to prepare a defense and fully protect his rights
of (1) fair notice (2) protection from double jeopardy, and (3)
whether the record shows with accuracy to what extent the
defendant may plead a former acquittal or conviction. Thereby,

3

the Rule 11 guilty plea cannot be truely held to be a knowingly and/or voluntarily agreement that contained a waiver of appeal. (See Attachment "A"pg.3).

## Misinformed Petitioner as to the True Statutory Maximum

The argument that it was an error for the District Court to misinform Petitioner as to the Statutory elements of a maximum sentence of which went beyond the admitted Counts by the Petitioner violates his Fifth and Sixth Amendment Rights. These Rights are implicated whenever a judge imposes a sentence "that is not Solely on 'facts reflected in the jury verdict or admitted by the defendant.'" Booker, 125 S.Ct. at 749(quoting Blakely, 542 U.S. at ____, 124 S.Ct. at 2537). Therefore, a judge may impose a sentence **solely on the basis of facts reflected in the jury verdict or admitted by the defendant.** Id. (quoting Blakely, 542 U.S. at ____, 124 S.Ct. at 2537)(Emphasis in original).

Furthermore, when the Court advised the Petitioner that the Probation Department "will in all likelihood" would be using the dismissed Counts in "determining the offense level under relevent conduct." Is a clear misapplication of law, and an inappropriate participation under Rule 11 for the District Court to have participated in, and open the backdoor to get around and/or violate a specificate performance of the plea agreement in view of the Petitioner's limited understanding of Federal law.

4

## Exceptions to Waiver of Appeal

The Petitioner setforth two exceptions Procedural and Substance in the § 2255 Issue IV to address the waiver in his plea agreement in light of the Statutory Construction and Separation of Powers Enchroachment arguements. Which **must be addressed** first before the Court ignores all nondefaulted claims for comparable relief. See <u>Dretke v. Haley</u>, 124 S. Ct. 1847,1849(2004).

## Knowingly and Intelligently Rule

The first one incorporated in Issue IV was the "knowingly and intelligently" rule of <u>Teague v. Lane</u>, 489 U.S. 288, 103 L.Ed 2d 334, 109 S. Ct. 1060(1989); durived from the line of clarifying procedural Supreme Court jurisprudence setforth in <u>Apprendi</u> up through its confirming position in <u>Shepard</u> supra. Which addressed the Due Process and Sixth Amendment concerns when it **announced** that its prior jurisprudence had **erroded** and thereby denying judical fact finding outside of the Constitutional scope. See §2255 Memorandum Issues I & II.

Instrictly limited circumstances, voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. <u>Bousley v. United States</u>, 523 U.S. 614, 140 L. Ed. 2d 828, 118 S. Ct. 1604(1998). The above <u>Teague</u> rule is founded on the notion that one of the "principal functions of habeas corpus is 'to assure that no man has been incarcerated under a procedure

which creates an impermissibly large risk that the innocent
will be convicted.'" 489 U.S., at 312 (quoting <u>Desist v. U.S.</u>,
394 U.S. 244,262, 226 L.Ed 2d 248, 89 S. Ct. 1030(1969).
Consequently, unless a new rule of criminal procedure is of
such a nature that "without it the likelihood of an accurated
conviction is seriously diminished," 489 U.S., at 313, there is
now reason to apply the rule retrocatively on habeas review.

## Miscarriage of Justice Doctrine

Secondly, the Supreme Court in <u>Dretke v. Haley</u>, 124 S. Ct.
1847(2004), recognized some of the foregoing procedural
complexities in addressing whether the miscarriage of justice"
exception to the procedural default doctrine **"applies where
an applicant asserts 'actual innocence' of a noncapital sentence."**
Id. at 1849 confirming this circuits precedences in <u>Haley v.
Cockrell</u>, 306 F.3d 257(5th Cir. 2002); <u>Sones v. Hargett</u>, 61
F.3d 410 (5th Cir. 1995); <u>Smith v. Collins</u>, 977 F.2d 951(5th
Cir. 1992). The Supreme Court ultimately "declined to answer
the question in the posture of this case and instead held that
a federal court faced with allegations of actual innocence,
whether of the sentence or of the crime charged, must first
address all nondefaulted claims for comparable relief and other
grounds for cause to excuse the procedural default." Id. at 1852.

Because the District Court failed first to consider alternative
grounds for relief urged by respondent grounds that might obviate

6

any need to reach the actual innocence question,...the Court
vacated the judgment and remanded. Id. at 1849. Consequently,
this Court must address the claims set forth in the Petitioner's
§2255 Motion first. Before denying habeas corpus relief under
the gateway of miscarriage of justice. (See §2255 Mimorandum
Issue IV).

Breached or Voidable Plea Agreement

The final exception which was clairified through Booker and
Shepard supra, is a clear breach of the Rule 11 Plea Agreement.
When the government has breached or elected to void the plea
agreement, the defendant is necessarily released from an appeal
waiver provision contained therein. United States v. Keresztury,
293 F.3d 750, 755(5th Cir. 2002). If the government breached
its plea agreement, the Petitioner may seek one of two remedies:
(1) specific performance, requiring that the sentence be vacated
and that a different judge sentence the defendant: or (2)
withdrawal of the guilty plea, United States v. Saling, 205
F.3d 764, 766, 768;(5th Cir. 2000). Furthermore, if a breach
has occured, the sentence must be vacated regadless of whether
the court was influenced by the government's action. Id. at
766-67.

In this case it was the Honorable G. Thomas Porteous, Jr.
who first implied an apparent breach the "all inclusive" Plea

Agreement on Record, then the government. See Re-Arraignment January 31, 2001, pgs. 6-12-15. As the Court advised the Petitioner that it would be sentencing him to the dismissed Counts through the Probation Department's use under Relevant Conduct. This would appear to be a common practice under the Mandatory Sentencing Reform Act of 1987. Therefore, the Attorney's failure to object to this core concern, which requires automatic reversal of the guilty plea conviction, this Court need not consider counsels failure to object. See United States v. Kerdachi, 756 F.2j 349, 352(1985).

If this Court complyes with Dretke supra. in the instant matter and aligns with Blakley's statutory maximum? The disposition of this case is governed by Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed. 2d 427(1971), and its progeny. That when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262, 92 S.Ct. at 499. This Circuit has applied the principles enunciated in Santobello that the government adhere strictly to the terms and conditions of the plea agreements it negotiates with defendants. United States v. Avery, 621 F.2d 214, 216(5th Cir. 1980); see also McKenzie v. Wainwright, 632 F.2d 649(5th Cir. 1980).

This Honorable Court must set the standard and adhear to the "new" Sixth Amendment line of jurisprudence which erroded

prior Supreme Court precedence allowing mandatory judicial fact
finding. The state of Washington, where the <u>Blakely</u> case originated,
has set the ultimate Fifth and Sixth Amendment precedent of
sentencing jurys. The Petitioner sees that in time the S.R.A.
will conform.

Therefore, the Petitioner's reasonable understanding has
been violated under <u>United States v. Huddleston</u>, 929 F.2d 1030,
1032(5th Cir. 1991). Furthermore, under the new Supreme Court
jurisprudence. This Court should find that a specific performance
of the plea agreement has been breached and Resentencing is
mandated. See <u>United States v. Mize</u>, 756 F.2d 352-53(1985).


### CONCLUSION


WHEREFORE, the Petitioner prays that this Court Grant the
instant Motion and make additional finding under <u>Dretke v. Haley</u>.
By affording additional briefing and hearings as this Honorable
deems necessary.

Dated: September 6, 2005

Respectfully Submitted,

Bryan A. Thomas, Sr.
Reg.#27128-034
FCI Milan
Post Office Box 1000
Milan, MI. 48160

9

CERTIFICATE OF SERVICE

I, Bryan A. Thomas, hereby certify that on this 6th. day of September, I mailed via First Class, U.S. Mail, postage prepaid, A Motion for Reconsideration of the Order of June 22, 2005 to:

A.U.S.A. Ms. D. M. Taylor
Hale Boggs Federal Building
501 Magazine St. Second Floor
New Orleans, Louisiana 70130

Dated: September 6, 2005

Respectfully submitted,

Bryan A. Thomas, Sr.
Reg. #27128-034
FCI Milan
Post Office Box 1000
Milan, MI. 48160

# *ATTACHMENT "A"*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 22  PH 1: 59

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO. 00-287
                                                  C.A. 05-1831

BRYAN A. THOMAS, SR.                              SECTION "F"


## J U D G M E N T

For the written reasons of the Court on file herein, accordingly;

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment denying

petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

New Orleans, Louisiana, this 22 Day of June, 2005.


_____
UNITED STATES DISTRICT JUDGE

Case 2:00-cr-00287-MLCF    Document 114    Filed 06/22/2005    Page 1 of 4

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2005 JUN 22 A 11: 20

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 00-287

BRYAN ANTHONY THOMAS, SR.                   SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Bryan Anthony Thomas, Sr.'s Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons that follow, the defendant's motion is DENIED.

<u>**Background**</u>

In January 2001, the defendant pled guilty in Section "T" of this court to one count of wire fraud and one count of money laundering. In connection with this plea, the government dismissed one count of bank fraud and 158 counts of money laundering.

The plea agreement included the following appellate waiver:

The defendant hereby expressly waives the right to appeal his sentence on any ground . . . and the defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under <u>Title 28, United States Code, Section 2255</u>. The defendant, however, reserves the right to appeal the following:
a. Any punishment imposed in excess of a statutory maximum, and
b. Any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

1

Fee___
Process___
X Dktd___
CtRmDep___
Doc. No.___

In July 2001, Section "T" of this court sentenced the defendant to 60 months imprisonment as to the wire fraud count and 97 months imprisonment as to the money laundering count, the sentences to run concurrently.

The defendant now seeks to vacate his sentence.

### I.

"[A] defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary." United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). This requires that the defendant "know that he had a right to appeal his sentence and that he was giving up that right." United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994) (quoting United States v. Melancon, 972 F.2d 566, 568 (5th Cir. 1992)) (internal quotes omitted).

In certain limited circumstances, however, a defendant can avoid his waiver of appeal. An ineffective assistance of counsel claim may survive the waiver of appeal, if the claim directly addresses the voluntariness of the waiver or the validity of the plea. See United States v. White, 307 F.3d 336, 337 (5th Cir. 2002). A defendant can also avoid a waiver of appeal if the government breaches the plea agreement. See United States v. Gonzalez, 309 F.3d 882, 886 (5th Cir. 2002).

### II.

The defendant has articulated no claims that survive his waiver of appeal, and has presented no evidence that his plea and

waiver of appeal were not knowing and voluntary. Accordingly, his motion under § 2255 must be denied.

The defendant's plea and waiver of appeal were knowing and voluntary. The defendant contends that they were not knowing and voluntary because he pled and waived his appeal rights before he knew what his sentence would be. However, as long as the defendant is aware of the maximum sentence that he could receive, as he was, then he is aware of the consequences of his guilty plea. See United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990). The defendant's plea agreement contained the following paragraph: "The defendant further understands that the maximum penalty he may receive if his plea of guilty is accepted is 5 years imprisonment, a fine, or both as to count 1; and 20 years imprisonment as to count 3, a fine or both." The plea agreement also stated that the defendant "fully understands the terms of this agreement."

The defendant knowingly and voluntarily signed a plea agreement that contained a waiver of appeal. The fact that the defendant waived his appeal rights prior to receiving his sentence is of no importance. The defendant was aware of the sentence that he could receive. See id. The circumstances of the defendant's waiver of appeal have already been examined by the Fifth Circuit, which concluded that the waiver was knowing and voluntary. See United States v. Thomas, No. 01-30905, 2002 WL 493913, at *1 (5th Cir. Mar. 11, 2002). The defendant's plea agreement required him

3

"to forego his right to relief in appeal just like this one, and he knew that when he signed it. We will therefore hold him to his word." White, 307 F.3d at 344.

The defendant has no right to this § 2255 proceeding. His sentence as to count 1 was the statutory maximum, and his sentence as to count 2 was below the statutory maximum. Both sentences were within the recommended guideline range. The defendant's plea agreement preserved his appeal rights only if his sentence exceeded the statutory maximum or constituted an upward departure from the guideline range. Those conditions are not fulfilled here.

Accordingly, the defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED.[1]

New Orleans, Louisiana, June 21, 2005.

_Martin L. C. Feldman_

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE

---

[1] Because the defendant's motion is denied on the waiver of appeal issue, the Court does not address the alternative arguments raised by the defendant or the Government.

4

# ATTACHMENT "B"

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-30905
Summary Calendar

U.S. COURT OF APPEALS

FILED

MAR 11 2002

CHARLES R. FULBRUGE III
CLERK

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

BRYAN A THOMAS, SR, also known as Bryan A Thomas

Defendant - Appellant

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 00-CR-287-1-T
--------------------

Before KING, Chief Judge, and HIGGINBOTHAM and BENAVIDES, Circuit
Judges.

PER CURIAM:[*]

Bryan A. Thomas, Sr., appeals from his guilty-plea
conviction and sentence for wire fraud and money laundering in
violation of 18 U.S.C. §§ 1343 and 1956(a)(1)(A)(i).  Thomas
argues that 1) his original plea agreement, in which he agreed to
plead guilty only to wire fraud, should have been enforced; 2)
his trial counsel was ineffective for failing to advise him that
his original plea agreement could be enforced and instead
advising him to agree to a second plea agreement; and 3) the
district court erred in calculating his sentence.

--------------------

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 01-30905
-2-

Thomas executed the second plea agreement after the
Government withdrew the first plea agreement prior to Thomas
entering a plea or being indicted.  Under the facts of this case,
we conclude that the Government was able to withdraw the first
plea agreement prior to its acceptance by the district court.
See United States v. Ocanas, 628 F.2d 353, 358 (5th Cir. 1980).
We further conclude that Thomas breached the first plea
agreement, which also justified the Government's withdrawal.  See
United States v. Ballis, 28 F.3d 1399, 1409 (5th Cir. 1994).
In light of these conclusions, Thomas's counsel was not
ineffective.  Thomas's plea agreement contained a valid waiver of
his statutory appellate rights.  We conclude that Thomas's waiver
was entered knowingly and voluntarily, and we therefore refuse to
consider Thomas's other arguments.  See United States v.
Melancon, 972 F.2d 566, 567 (5th Cir. 1992).

The district court's judgment is AFFIRMED.

# *ATTACHMENT "C"*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 SEP 14  PM 4: 30

LORETTA G. WHYTE
CLERK

USAO#1998R00155

UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**INDICTMENT FOR WIRE FRAUD,**
**BANK FRAUD AND MONEY LAUNDERING**

**FELONY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. **00-287** |
| v. | * | SECTION: **SECT. J MAG. 1** |
| BRYAN ANTHONY THOMAS, SR. | * | VIOLATION: 18 U.S.C.§ 1343 |
| | * | 18 U.S.C.§ 1344 |
| | | 18 U.S.C.§ 1956 |
| | | (a)(1)(A)(i) |
| | * | 18 U.S.C. §2 |

*        *        *

The Grand Jury charges that:

<u>COUNT 1</u>

A.    <u>AT ALL TIMES MATERIAL HEREIN:</u>

1.    BDT Asset Management, L.L.C. ("BDT") located at 1425 Broad Street, Suite 200, New Orleans, Louisiana, was a company created by the defendant **BRYAN ANTHONY THOMAS, SR.,** to facilitate the scheme outlined in Part B, below.  The checking accounts maintained by BDT at Bank One, U.S. Bank, and Hibernia National

1

Fee _____
Process _____
X  Dktd _____
CtRmDep _____
Doc.No _____

Bank, were used as the "Escrow Account" in the scheme outlined in Part B, below.

2.    Bank One was a financial institution located in New Orleans, Louisiana, the deposits of which were insured by the Federal Deposit Insurance Corporation.    It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

3.    U.S. Bank was a financial institution located in Reno, Nevada, the deposits of which were insured by the Federal Deposit Insurance Corporation.    It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

4.    Hibernia National Bank ("Hibernia") was a financial institution located in New Orleans, Louisiana, the deposits of which were insured by the Federal Deposit Insurance Corporation. It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

5.    Persons known to the Grand Jury, and hereafter referred to as "Investors", were residents of the greater New Orleans metropolitan area and elsewhere. BRYAN ANTHONY THOMAS, SR., duped the Investors through lies, misrepresentations, fraudulent and fictitious contracts, wire transfers, checks, and agreements, and

2

00000303

other acts into making financial investments with him through his company BDT.

6. BRYAN ANTHONY THOMAS, SR. never made any financial investments with Investors' funds, but instead, the defendant used the funds for his own personal use or to promote the wire fraud scheme set forth below.

B. **THE SCHEME:**

1. From in or about April 1998 through August 2000, in the Eastern District of Louisiana and elsewhere, the defendant, BRYAN ANTHONY THOMAS, SR., knowingly devised and attempted to devise a scheme and artifice to defraud Investors and obtain money and property by means of false and fraudulent pretenses, representations, and promises, in connection with his promotion as an investment counselor described in the fictitious contracts between BDT and Investors.

The Investors were provided with a document titled "Deposit Agreement (Capital Funding Program)", (hereafter "Deposit Agreement"), by BRYAN ANTHONY THOMAS, SR., which contained the following material false statements, representations and promises:

a. Investors monies were to provide a funding source for project funding and the profit on the project would be generated by the defendant.

3

b.    The defendant represented that he had specialized expertise to successfully place funds for trade.

c.    The defendant represented that the Investors' funds would be wired into his Escrow Account and that this Escrow Account would at all times maintain a balance equal to the Investors' principal.

d.    That a "Bank Guarantee" existed that equaled 106% of the Investors' principal.    Additionally, should the "Bank Guarantee" be cashed out, the Investors would receive additional earnings on a pro rata basis.

e.    Investors were guaranteed a ten (10%) percent interest rate return on their investment each month which would be paid to them per trading cycle.

f.    The Investors' first profit return would be on or before the expiration of thirty (30) "International Banking Days."

2.    It was further part of his scheme and artifice to defraud that **BRYAN ANTHONY THOMAS, SR.,** made and caused to be made oral material misrepresentations to the Investors to induce them to sign the bogus Deposit Agreement and invest funds with his company. Such misrepresentations included the following:

a.    The defendant was the funds manager of the "Capital Funding Program" which involved the buying and selling of medium-

4

G00000305

term notes or corporate bonds.  Medium-term notes would be traded to create profits.  Profits would be passed to the Investors.

b.    The defendant conducted two and one-half  years of due diligence on the "Capital Funding Program."

c.    The Investors' principal was guaranteed and protected.

d.    All interest payments had been made and were current.

e.    The trading in medium-term notes and corporate bonds was safe and secure.

f.    The Investors could get their principal back anytime.

3.    As part of the scheme, after the Investors gave **BRYAN ANTHONY THOMAS, SR.,** or his representative, the money for their original investment, the defendant caused to be wired directly to the Investor's bank account interest payments based on a fictitious "trading cycle", when in truth there was no "trading cycle" and **BRYAN ANTHONY THOMAS, SR.** was simply using new Investors' money to make the interest payments to other Investors in order to create the appearance that the Investors were actually earning 10% interest a month on their principal investments.

4.    It was further part of this scheme and artifice to defraud that **BRYAN ANTHONY THOMAS, SR.** did not inform the Investors

5

00000306

that he had diverted source of the Investors' funds to his personal use in the form of cash and purchases of items including, but not limited to, automobiles, clothing, jewelry and real estate.

5.    It was also part of the scheme and artifice that beginning in approximately July, 2000, in order to lull the Investors into a false sense of security and to postpone the Investors from bringing their complaints to authorities, the defendant **BRYAN ANTHONY THOMAS, SR.** made misrepresentations to the Investors that he was assisting federal authorities in tracing "dirty" funds in the Escrow Account and that the Escrow Account was frozen and therefore, he could not send them their interest payments when, in truth in fact, he knew that he was not "working" with federal authorities to trace "dirty" funds in the Escrow Account and that the funds in the Escrow Account were never going to be returned to him.

8.    As part of the scheme and artifice to defraud, **BRYAN ANTHONY, SR.** caused Investors to invest approximately $7.9 million dollars in the scheme.

C.    **THE WIRE:**

On or about April 1, 1999 in the Eastern District of Louisiana, the defendant, **BRYAN ANTHONY THOMAS, SR.,** for the purpose of executing the scheme and artifice set forth in paragraph B, knowingly transmitted and caused to be transmitted in interstate

6

00000307

commerce a wire transfer of $102,500 by means of a wire communication from Bank One in New Orleans, Louisiana, to U.S. Bank in Reno, Nevada,.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 2

A.  The allegations contained in Paragraphs A and B of Count 1 as set forth above are realleged and incorporated by reference as though fully set forth in their entirety herein.

B.  THE BANK FRAUD SCHEME:

Beginning on or about July 29, 1999, and continuing until August 17, 1999, in the Eastern District of Louisiana and elsewhere, BRYAN ANTHONY THOMAS, SR. knowingly and willfully executed and attempted to execute a scheme and artifice to defraud Bank One.

It was part of the scheme and artifice that, on the dates listed below, the defendant caused to be deposited into Bank One, account number 1574917025, worthless checks, in the below listed amounts, all drawn on account number 153790085515 at U.S. Bank:

| Date | Amount worthless deposit |
|------|--------------------------|
| July 29, 1999 | $ 50,000.00 |
| August 2, 1999 | $ 65,000.00 |

7

August 13, 1999          $ 147,500.00

August 17, 1999          $ 150,000.00

Total                    $ 412,500.00

It was further part of the scheme and artifice that by means of wire transfer the defendant withdrew money out of Bank One, account 1574917025, based on the above listed deposits, knowing that there were insufficient funds to cover the withdrawals; all in violation of Title 18, United States Code, Sections 1344 and 2.


### COUNT 3-161

A.   The allegations contained in Paragraphs A and B of Count 1 as set forth above, are realleged and incorporated by reference as though fully set forth in their entirety herein.

B.   <u>THE UNLAWFUL FINANCIAL TRANSACTIONS:</u>

From April 22, 1999 through June 19, 2000, in the Eastern District of Louisiana, and elsewhere, **BRYAN ANTHONY THOMAS, SR.:**

1.   knowing that the property involved in the below listed financial transactions represented the proceeds of some form of unlawful activity,

2.   did knowingly and willfully conduct and caused to be conducted financial transactions affecting interstate commerce (as defined in Title 18, United States Code, Section 1956 (c)(4)), that is, approximately $2.6 million in wire transfers and checks written

8

00000309

out of the defendant's accounts at Bank One, and Hibernia, as set forth below, to the Investors' bank accounts with the intent to promote the carrying on of the specified unlawful activity set forth in Paragraph B of Count 1 by lulling the Investors in connection with the scheme and artifice to defraud; and

3.    such financial transactions as set forth below did in fact involve the proceeds of specified unlawful activity, that is, the knowing and intentional execution of the wire fraud scheme alleged in Count 1 above; and

4.    the defendant did so with the intent to promote the carrying on of such specified unlawful activity, as follows:

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|---|---|---|---|
| 3 | 4/22/99 | $10,000.00 | BANK ONE |
| 4 | 4/30/99 | $ 1,250.00 | BANK ONE |
| 5 | 4/30/99 | $ 3,125.00 | BANK ONE |
| 6 | 4/30/99 | $ 5,000.00 | BANK ONE |
| 7 | 4/30/99 | $10,000.00 | BANK ONE |
| 8 | 4/30/99 | $10,000.00 | BANK ONE |
| 9 | 4/30/99 | $50,000.00 | BANK ONE |
| 10 | 5/18/99 | $10,000.00 | BANK ONE |
| 11 | 5/18/99 | $40,000.00 | BANK ONE |
| 12 | 5/20/99 | $25,000.00 | BANK ONE |
| 13 | 5/25/99 | $ 2,500.00 | BANK ONE |
| 14 | 5/25/99 | $10,000.00 | BANK ONE |
| 15 | 5/25/99 | $55,000.00 | BANK ONE |

00000310

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|---|---|---|---|
| 16 | 6/1/99 | $ 3,125.00 | BANK ONE |
| 17 | 6/2/99 | $60,000.00 | BANK ONE |
| 18 | 6/3/99 | $ 1,250.00 | BANK ONE |
| 19 | 6/3/99 | $ 5,000.00 | BANK ONE |
| 20 | 6/3/99 | $10,000.00 | BANK ONE |
| 21 | 6/14/99 | $10,000.00 | BANK ONE |
| 22 | 6/14/99 | $20,000.00 | BANK ONE |
| 23 | 6/25/99 | $10,000.00 | BANK ONE |
| 24 | 7/2/99 | $ 9,500.00 | BANK ONE |
| 25 | 7/2/99 | $ 1,250.00 | BANK ONE |
| 26 | 7/2/99 | $ 2,500.00 | BANK ONE |
| 27 | 7/2/99 | $ 2,500.00 | BANK ONE |
| 28 | 7/2/99 | $ 3,125.00 | BANK ONE |
| 29 | 7/2/99 | $ 5,000.00 | BANK ONE |
| 30 | 7/2/99 | $ 7,500.00 | BANK ONE |
| 31 | 7/2/99 | $10,000.00 | BANK ONE |
| 32 | 7/2/99 | $10,000.00 | BANK ONE |
| 33 | 7/2/99 | $50,000.00 | BANK ONE |
| 34 | 7/9/99 | $ 1,250.00 | BANK ONE |
| 35 | 7/9/99 | $ 2,500.00 | BANK ONE |
| 36 | 7/9/99 | $ 5,000.00 | BANK ONE |
| 37 | 7/9/99 | $10,000.00 | BANK ONE |
| 38 | 7/13/99 | $10,000.00 | BANK ONE |
| 39 | 7/15/99 | $10,000.00 | BANK ONE |
| 40 | 7/15/99 | $20,000.00 | BANK ONE |
| 41 | 7/23/99 | $10,000.00 | BANK ONE |
| 42 | 7/30/99 | $ 1,250.00 | BANK ONE |
| 43 | 7/30/99 | $ 2,500.00 | BANK ONE |

G0000311

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|-------|------|--------|------------------|
| 44 | 7/30/99 | $ 2,500.00 | BANK ONE |
| 45 | 7/30/99 | $   500.00 | BANK ONE |
| 46 | 8/2/99 | $ 3,125.00 | BANK ONE |
| 47 | 8/2/99 | $ 3,750.00 | BANK ONE |
| 48 | 8/2/99 | $15,000.00 | BANK ONE |
| 49 | 8/2/99 | $17,500.00 | BANK ONE |
| 50 | 8/2/99 | $ 6,500.00 | BANK ONE |
| 51 | 8/4/99 | $10,000.00 | BANK ONE |
| 52 | 8/11/99 | $ 5,000.00 | BANK ONE |
| 53 | 8/13/99 | $ 1,250.00 | BANK ONE |
| 54 | 8/13/99 | $ 5,000.00 | BANK ONE |
| 55 | 8/13/99 | $ 7,500.00 | BANK ONE |
| 56 | 8/13/99 | $10,000.00 | BANK ONE |
| 57 | 8/13/99 | $57,500.00 | BANK ONE |
| 58 | 8/16/99 | $ 2,500.00 | BANK ONE |
| 59 | 8/16/99 | $10,000.00 | BANK ONE |
| 60 | 8/16/99 | $20,000.00 | BANK ONE |
| 61 | 9/24/99 | $ 2,500.00 | BANK ONE |
| 62 | 9/24/99 | $ 3,125.00 | BANK ONE |
| 63 | 10/4/99 | $57,500.00 | BANK ONE |
| 64 | 10/6/99 | $ 1,250.00 | BANK ONE |
| 65 | 10/6/99 | $ 5,000.00 | BANK ONE |
| 66 | 10/7/99 | $ 5,000.00 | BANK ONE |
| 67 | 11/1/99 | $ 5,000.00 | HIBERNIA |
| 68 | 11/1/99 | $ 2,500.00 | HIBERNIA |
| 69 | 11/2/99 | $67,500.00 | HIBERNIA |
| 70 | 11/2/99 | $ 2,500.00 | HIBERNIA |
| 71 | 11/2/99 | $ 2,500.00 | HIBERNIA |

00000312

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|-------|------|--------|------------------|
| 72 | 11/2/99 | $ 2,500.00 | HIBERNIA |
| 73 | 11/3/99 | $ 20,000.00 | HIBERNIA |
| 74 | 11/3/99 | $ 10,000.00 | HIBERNIA |
| 75 | 11/3/99 | $ 10,000.00 | HIBERNIA |
| 76 | 11/3/99 | $ 3,125.00 | HIBERNIA |
| 77 | 11/3/99 | $ 1,250.00 | HIBERNIA |
| 78 | 11/3/99 | $ 10,000.00 | HIBERNIA |
| 79 | 11/3/99 | $ 3,125.00 | HIBERNIA |
| 80 | 11/3/99 | $ 1,250.00 | HIBERNIA |
| 81 | 11/16/99 | $ 35,000.00 | HIBERNIA |
| 82 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 83 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 84 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 85 | 11/16/99 | $ 3,750.00 | HIBERNIA |
| 86 | 11/16/99 | $ 35,000.00 | HIBERNIA |
| 87 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 88 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 89 | 11/16/99 | $ 15,000.00 | HIBERNIA |
| 90 | 11/16/99 | $ 3,700.00 | HIBERNIA |
| 91 | 11/19/99 | $276,324.62 | HIBERNIA |
| 92 | 12/1/99 | $ 5,000.00 | HIBERNIA |
| 93 | 12/1/99 | $ 3,125.00 | HIBERNIA |
| 94 | 12/1/99 | $ 2,500.00 | HIBERNIA |
| 95 | 12/1/99 | $ 2,500.00 | HIBERNIA |
| 96 | 12/1/99 | $ 2,500.00 | HIBERNIA |
| 97 | 12/1/99 | $ 2,500.00 | HIBERNIA |
| 98 | 12/2/99 | $ 30,000.00 | HIBERNIA |
| 99 | 12/2/99 | $ 30,000.00 | HIBERNIA |

00000313

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|-------|------|--------|------------------|
| 100 | 12/2/99 | $ 11,250.00 | HIBERNIA |
| 101 | 12/2/99 | $ 17,500.00 | HIBERNIA |
| 102 | 12/6/99 | $ 10,000.00 | HIBERNIA |
| 103 | 12/6/99 | $  7,500.00 | HIBERNIA |
| 104 | 12/6/99 | $  7,500.00 | HIBERNIA |
| 105 | 12/6/99 | $ 67,500.00 | HIBERNIA |
| 106 | 12/16/99 | $ 11,250.00 | HIBERNIA |
| 107 | 12/21/99 | $ 30,000.00 | HIBERNIA |
| 108 | 12/21/99 | $  5,000.00 | HIBERNIA |
| 109 | 12/21/99 | $  2,500.00 | HIBERNIA |
| 110 | 12/21/99 | $  2,500.00 | HIBERNIA |
| 111 | 12/21/99 | $  1,250.00 | HIBERNIA |
| 112 | 1/11/00 | $ 25,000.00 | HIBERNIA |
| 113 | 1/11/00 | $ 22,500.00 | HIBERNIA |
| 114 | 1/11/00 | $  7,500.00 | HIBERNIA |
| 115 | 1/12/00 | $ 62,500.00 | HIBERNIA |
| 116 | 1/24/00 | $ 12,500.00 | HIBERNIA |
| 117 | 1/25/00 | $ 50,000.00 | HIBERNIA |
| 118 | 1/31/00 | $ 90,000.00 | HIBERNIA |
| 119 | 1/31/00 | $ 10,000.00 | HIBERNIA |
| 120 | 1/31/00 | $ 10,000.00 | HIBERNIA |
| 121 | 1/31/00 | $  3,750.00 | HIBERNIA |
| 122 | 2/1/00 | $  5,000.00 | HIBERNIA |
| 123 | 2/1/00 | $  5,000.00 | HIBERNIA |
| 124 | 2/1/00 | $  3,125.00 | HIBERNIA |
| 125 | 2/1/00 | $  2,500.00 | HIBERNIA |
| 126 | 2/2/00 | $  5,000.00 | HIBERNIA |
| 127 | 2/2/00 | $  2,500.00 | HIBERNIA |

00000314

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|-------|------|--------|------------------|
| 128 | 2/7/00 | $ 22,500.00 | HIBERNIA |
| 129 | 2/8/00 | $36,250.00 | HIBERNIA |
| 130 | 2/8/00 | $ 7,500.00 | HIBERNIA |
| 131 | 2/8/00 | $ 5,000.00 | HIBERNIA |
| 132 | 2/8/00 | $ 22,500.00 | HIBERNIA |
| 133 | 2/18/00 | $ 32,500.00 | HIBERNIA |
| 134 | 2/18/00 | $ 25,000.00 | HIBERNIA |
| 135 | 2/18/00 | $ 15,000.00 | HIBERNIA |
| 136 | 2/18/00 | $ 5,000.00 | HIBERNIA |
| 137 | 2/18/00 | $ 2,500.00 | HIBERNIA |
| 138 | 2/18/00 | $ 2,500.00 | HIBERNIA |
| 139 | 2/28/00 | $ 10,000.00 | HIBERNIA |
| 140 | 2/28/00 | $ 10,000.00 | HIBERNIA |
| 141 | 2/28/00 | $ 10,000.00 | HIBERNIA |
| 142 | 2/28/00 | $ 5,000.00 | HIBERNIA |
| 143 | 2/28/00 | $ 5,000.00 | HIBERNIA |
| 144 | 2/28/00 | $ 5,000.00 | HIBERNIA |
| 145 | 2/28/00 | $ 3,750.00 | HIBERNIA |
| 146 | 2/28/00 | $ 3,125.00 | HIBERNIA |
| 147 | 2/28/00 | $ 2,500.00 | HIBERNIA |
| 148 | 2/29/00 | $ 90,000.00 | HIBERNIA |
| 149 | 3/23/00 | $ 25,000.00 | HIBERNIA |
| 150 | 4/10/00 | $ 16,423.00 | HIBERNIA |
| 151 | 4/20/00 | $100,000.00 | HIBERNIA |
| 152 | 4/26/00 | $ 50,000.00 | HIBERNIA |
| 153 | 5/4/00 | $ 40,000.00 | HIBERNIA |
| 154 | 5/19/00 | $ 20,000.00 | HIBERNIA |
| 155 | 5/24/00 | $ 55,778.46 | HIBERNIA |

14

G0000315

| COUNT | DATE | AMOUNT | ORIGINATING BANK |
|-------|--------|------------|------------------|
| 156 | 5/26/00 | $ 20,000.00 | HIBERNIA |
| 157 | 5/31/00 | $ 15,000.00 | HIBERNIA |
| 158 | 6/1/00 | $ 55,000.00 | HIBERNIA |
| 159 | 6/6/00 | $ 6,500.00 | HIBERNIA |
| 160 | 6/16/00 | $ 30,000.00 | HIBERNIA |
| 161 | 6/19/00 | $ 4,000.00 | HIBERNIA |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

<u>NOTICE OF FORFEITURE</u>

1.   The allegations of Counts 1 through 3 of this indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 1343, Title 28, United States Code, Section 2461 and Title 21, United States Code, Section 853.

2.   As a result of the offenses alleged in Counts 1 through 3, defendant, **BRYAN ANTHONY THOMAS, SR.**, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 1343 and 981(c), made applicable through Title 28, United States Code, Section 2461, and Title 21, United States Code, Section 853, any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United

15

00000316

States Code, Section 1343, including, but not limited to, the following:

    a.    One 2000 Corvette, bearing Vehicle Identification Number: 1G1YY32G9Y5129403;

    b.    One 1997 Ford Expedition, bearing Vehicle Indentification  Nubmer : 1FMEU17L6VLC33205

    3.    If any of the above described property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

16

00000317

All in violation of Title 18, United States Code, Sections 1343 and 981(c), Title 28, United States Code, Section 2461 and Title 21, United States Code, Section 853.

A TRUE BILL:

_____
F O R E P E R S O N

_____
EDDIE J. JORDAN, JR. (7450)
UNITED STATES ATTORNEY

_____
WALTER F. BECKER, JR. (1685)
Assistant United States Attorney
Chief, Criminal Division

_____
DOROTHY MANNING TAYLOR (12678)
Assistant United States Attorney
New Orleans, Louisiana
September 14, 2000

17

C0000318

# *ATTACHMENT "D"*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

BRYAN ANTHONY THOMAS, SR.   §
  §
  §   Crim. No. 00-CR-287
VS.   §   Civil No. 05-CV-1831
  §
  §   Section F
UNITED STATES OF AMERICA   §
_____/   §

STATE OF MICHIGAN   )
               )ss. **DECLARATION OF BRYAN A. THOMAS**
COUNTY OF WASHTENAW )

Now Comes Bryan A. Thomas, having been duly sworn under oath
and states as follows:

1) My name is Bryan A. Thomas, and I currently reside at
FCI Milan, P.O. Box 1000, Milan Michigan 48160.

2) My Birthdate is _November 30_, 19_62_.

3) I pleaded guilty to Count 1, 18 U.S.C. § 1343 of my
indictment and Count 3, 18 U.S.C. § 1956(a)(1)(A)(i) charge of a
$10,000.00 money laundering instrument.

4) Acting on the advice of my legal counsel, I fearfully
pleaded guilty due to the fact that I wanted to go to trial in
view of the Probation Departments PSI Report. Which listed the
same amount of time that I would have received if I went to trial.

5) That at that point I then had a full understanding from
reading the USSG § 2F1.1(a) and § 2F1.1(b)(1)(D) that my offense
level would be calculated to a total of nine (9), resulting in a
sentencing range of a level I and four to ten months imprisonment.

6) That as to Count 3 sentencing provisions under § 2S1.1(a)
(1) and § 2S1.1(b)(2)(A) that under Catagory I and a Base Offence
Level of 23, that I would have been sentenced to forty-six to

fifty-seven (46-57) months imprisionment.

    7) That I also understood through my attorney that the government would dismiss Count 2, 18 U.S.C. §1344 Bank fraud and Counts 4-161 **inclusively**, 18 U.S.C. § 1956 (a)(1)(A)(i) Money laundering and that there would not be any more charges brought against me in the Eastern District of Louisiana.

    8) That I further understood from my legal counsel the Court would just sentence me under the two Counts that I plead guilty to and not to worry about the rest of the dismissed Counts. Therefore, I signed the Rule 11 Plea Agreement.

    9) That to my suprise, when I received the Pre-Sentence Investigation Report, instead of a total Offense Level of twenty-three (23) for Count 3, the Probation Department recommended a Base Offence Level of of twenty-nine (29). Just as the District Court had stated that I would do. Therein suggesting a Category Level I and an eighty-seven to one-hundred eight (87-108) month prision sentence. Which the government and the Court adopted in its sentencing determination.

    10) I then filed a Notice of appeal to the Fifth Circuit challenging my guilty plea and my sentence. Due to the fact that I did not bargain for nor did I enter the plea of guilty to have the government and the District Court violate my Rule 11 Plea, by piggybacking the dismissed Counts onto Count 1 through the unlawfull mandatory sentencing application of the Sentencing Reform Act of 1987.

11)  That I am not under the influence of alcohol or other
Controled substances, prescribed or otherwise, which may impair
my thinking or reasoning in swearing by through the signing of
this Declaration.

12)  I understand the definition of perjury and I am fully
aware of the penalties, both Civil and Criminal, that may result
from perjurous conduct.

13)  With that knowledge, I continue to assert the fore
going of my own freewill.

Dated: September 6, 2005                    Respectfully submitted,

                                            Bryan A. Thomas, Sr.

3

