FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC 13  PM 3: 56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

versus                                                NUMBER 00-287

BRYAN ANTHONY THOMAS, SR.                             SECTION: "F"

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO RESUBMIT A REVISED RECONSIDERATION MOTION
OF THE JUDGMENT OF AUGUST 26, 2005**

Under normal circumstances, the government would argue that the defendant's motion for reconsideration is jurisdictionally timed barred. However, in light of Hurricane Katrina, the government will not oppose the defendant's request to file an out of time motion for reconsideration despite the fact that the defendant failed to file within the jurisdictional time limit of ten days.

Analyzing the defendant's motion for reconsideration, the government submits that the defendant presents no new evidence which would necessitate a reversal of the Court's original order of August 26, 2005, denying the defendant's motion for relief under Title 28, United States Code, Section 2255, or even the necessity of a hearing. Furthermore, the facts submitted by the defendant in his motion for reconsideration are incorrect and do not warrant a reversal of the Court's August

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

26, 2005 Order, or necessitate a hearing.

In its August 26, 2005, order, the Court determined that the defendant's plea and waiver of appeal were knowing and voluntary. Order and Reasons, p. 3. Indeed, the Fifth Circuit previously had closely examined the issue of the defendant's knowing and voluntary waiver and found that the waiver to be knowing and voluntary. See United States v. Thomas, No. 01-30905, 2002 WL 493913, at *1 (5th Cir. Mar. 11, 2002). The Court, in its Order specifically cited the appellate waiver language contained in the plea agreement which the defendant signed and, which language was reviewed in detail in open court by the sentencing judge. The waiver reads in part:

> a. Any punishment imposed in excess of a statutory maximum, and
> b. Any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

Order and Reasons, p. 1.

The defendant's motion for reconsideration posits that the Court in its August 26th ruling ignored the three exceptions to the "'waiver of appeal' created and/or revealed when the Supreme court announce[d] a new rule of law." Defendant's motion for reconsideration, p. 2. This "re-submission" falls because the Court did not ignore the defendant's argument and cases,[1] rather, the Court found that the defendant "articulated no claims that survive his waiver of appeal, and has presented no evidence that his plea and waiver of appeal were not knowing and voluntary," and thus, the Court "does not address the alternative arguments raised by the defendant or the government."

---

[1] Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005).

2

Order and Reasons, pp.2-4.

However, for argument sake, the government reviewed the defendant's motion for reconsideration, and submits that the defendant incorrectly states that he was unaware of the maximum penalty he would face under the money laundering charge. Contradicting this allegation is the defendant's signed plea agreement which states, "The defendant further understands that the **maximum** penalty he may receive if his plea of guilty is accepted is 5 years imprisonment, a fine, or both as to count 1; and 20 years imprisonment as to count 3, a fine or both." Plea agreement, January 31, 2001, pp. 2-3. (Emphasis in original.) Attached as Exhibit A hereto.

Furthermore, on the Booker issues cited in defendant's motion to reconsider on page 4, the defendant again is incorrect in his assertions. The defendant admitted under oath in the Factual Basis that the Investors he duped gave him money totaling approximately $7 million as part of the scheme. He further admitted that he had transferred approximately $3,852,495.36 from Bank One and Hibernia Bank knowing this money was proceeds of some form of unlawful activity and which were financial transactions which affected interstate commerce. Factual Basis, January 31, 2001, pp. 4, 6-7. Attached as Exhibit B. Therefore, the defendant's allegations in his motion for reconsideration must fail as being factually incorrect and unsupported by the record.

Regarding the defendant's arguments citing Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005), these were presented in his original 2255 motion and the government re-submits and incorporates

3

herein the law previously submitted in its original opposition to the defendant's 2255 motion.

Wherefore, the government requests that this Court deny the defendant's motion for reconsideration for the reasons set forth above. The government further requests that this Court waive the hearing presently on December 21, 2005.

                    Respectfully submitted,

                    **JIM LETTEN**
                    **UNITED STATES ATTORNEY**

                    **DOROTHY MANNING TAYLOR**
                    Assistant United States Attorney
                    Bar Roll No. 12678
                    500 Poydras St., Room 210 B
                    New Orleans, Louisiana 70130
                    Telephone: (504) 680-3083

CERTIFICATE OF SERVICE
I certify that a copy of the foregoing has been served upon the *pro se* defendant by mailing the same to him, properly addressed and postage prepaid this 13th day of December, 2005.

Assistant United States Attorney

4



**U.S. Department of Justice**

*Eastern District of Louisiana*
*U. S. Attorney's Office*

---

Dorothy Manning Taylor
Assistant United States Attorney

Hale Boggs Federal Building
501 Magazine Street, Second Floor
New Orleans, LA 70130

Telephone # :(504) 680-3083
Fax # : (504) 589-3594

January 31, 2001

Honorable G. Thomas Porteous, Jr.
United States District Judge
Eastern District of Louisiana
500 Camp Street, C405
New Orleans, Louisiana 70130

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 JAN 31 PM 3: 55
LORETTA G. WHYTE
CLERK

    Re:  *United States v. Bryan Anthony Thomas, Sr.*
         *Criminal Docket No. 00-287 "T" (1)*

Dear Judge Porteous:

    In compliance with the holding of <u>Bryan v. United States</u>, 492 F.2d 775 (1974) and with Rule 11 of the Federal Rules of Criminal Procedure, the Government wishes to acknowledge the following agreement between the Government and Bryan Anthony Thomas, Sr., the defendant, in the above-captioned proceeding. Michael S. Zerlin, attorney for Bryan Thomas, has informed undersigned that his client fully understands the terms of this agreement.

    The defendant, Bryan Anthony Thomas, is charged in a 161 count indictment charging him in count 1 with violation of *Title 18, United States Code Section 1343*, (wire fraud), count 2 with violation of *Title 18, United States Code, Section 1344* (bank fraud) and counts 3-161 with money laundering. There is also a notice of forfeiture. Count 1, the wire fraud, charges a scheme and artifice to defraud victim/investors by representing to them that they would receive a 10% return on their investment each month when in truth he used the money for his own personal use, never invested their funds as promised but instead used new victim/investors' money to pay the previous victim/investor. Count 2, the bank fraud, charges a check kiting scheme where he made deposits into his business account at Bank One knowing that he had insufficient funds to cover those deposits. Counts 3-161 charge that he used the money he obtained through the bank fraud to promote and carry on the specified unlawful activity. In exchange for the defendant's guilty plea, the Government agrees that it dismiss count 2 and counts 4-161 inclusive, and will not bring any other criminal charges in the Eastern District of Louisiana, including obstruction of justice charges, arising from actions by the defendant in connection with the wire fraud and bank fraud.

    The defendant further understands that the **maximum** penalty he may receive if his plea of guilty is accepted is 5 years imprisonment, a fine, or both as to count 1; and 20 years

Fee_____
Process_____
X Dktd_____
✓ CtRmDep____
Doc.No._____

EXHIBIT "A"

Judge Porteous
January 31, 2001
Page -2-

imprisonment as to count 3, a fine or both. In the alternative to the fine stated earlier, a fine of $250,000 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under *Title 18, United States Code, Section 3571* may be imposed.

It also is understood that the Court will comply with the restitution provisions of Section 3663 of Title 18, United States Code. The defendant agrees that any restitution imposed will be non-dischargeable in any bankruptcy proceeding and that defendant will not seek or cause to be sought a discharge or a finding of dischargeability as to the restitution obligation.

Further, the defendant understands that a mandatory special assessment fee of $200.00 shall be imposed under the provisions of Section 3013 of Title 18, United States Code. This special assessment must be paid on the date of sentencing. Failure to pay this special assessment may result in the plea agreement being void.

The defendant further understands that the Court, in imposing a sentence of a term of imprisonment, may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment for a period of up to 5 years pursuant to *Title 18, United States Code, Section 3583*. Supervised release is a period following release from prison during which defendant's conduct will be monitored by the Court or the Court's designee. Defendant fully understands that if defendant violates any of the conditions of supervised release that the Court has imposed, defendant's supervised release may be revoked and defendant may be ordered by the Court to serve in prison all or part of the term of supervised release.

The defendant hereby expressly waives the right to appeal his sentence on any ground including any appeal right confronted by *Title 18, United States Code, Section 3742* and the defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under *Title 28, United States Code, Section 2255*. The defendant, however, reserves the right to appeal the following:

   a. Any punishment imposed in excess of a statutory maximum, and

   b. Any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

The defendant understands that any discussions with defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. The

Judge Porteous
January 31, 2001
Page -3-

defendant additionally understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release.

This plea agreement is predicated upon the fact that the defendant agrees to submit to interviews whenever and wherever requested by law enforcement authorities. The defendant understands he must be completely truthful. The defendant also agrees to appear before any Grand Jury or trial jury and to testify truthfully. The defendant understands if he is not truthful, this agreement will be null and void and defendant may be prosecuted for perjury or making false statements. The defendant agrees neither to implicate anyone falsely nor to exculpate or protect anyone falsely. The defendant further agrees to immediately advise the Government as to any person defendant believes to be violating the law and defendant agrees to assist the Government with regard to the investigation and prosecution of criminal conduct. The Government agrees that nothing the defendant says, and nothing derived therefrom, will be used against him in any future proceedings.

The Government agrees to bring to the attention of the Court any cooperation rendered by the defendant prior to sentencing. However, it shall be in the sole discretion of the United States Attorney as to whether a motion requesting departure from the sentencing guidelines should be filed.

The defendant agrees to forfeit and give to the United States prior to the date of sentencing any right, title and interest which the defendant may have in the assets, including but not limited to cash assets, negotiable instruments, securities, property, jewelry, clothes, vehicles or other things of value, including any and all property which has been transferred or sold to or deposited with any third party, known or unknown by the defendant for a period of not less than 10 years prior to the date of the signing of this agreement that were involved in, used in, intended for use in, or obtained through, the wire fraud as well as any asset, interest, or proceeds defendant received or could receive or cause to be received by a third party in the future, directly or indirectly, in whole or in part, from defendant's illegal activities.

The defendant further waives any right to seek attorney's fees and/or other litigation expenses under the "Hyde Amendment", Title 18, United States Code, Section 3006A and the defendant acknowledges that the Government's position in the instant prosecution was not vexatious, frivolous or in bad faith.

Judge Porteous
January 31, 2001
Page -4-

    The defendant understands that the statements set forth above represent defendant's entire agreement with the Government; there are not any other agreements, letters, or notations that will affect this agreement.

                                              EDDIE J. JORDAN, JR.
                                              UNITED STATES ATTORNEY

                                              DOROTHY MANNING TAYLOR
                                              Assistant. U. S. Attorney

BRYAN ANTHONY THOMAS, SR.
Defendant

Date: JAN. 31, 2001


MICHAEL S. ZERLIN, ESQ.
Attorney for the defendant

Date: Jan 31, 2001

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 31  PM 3: 55

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 00-287 |
| v. | * | SECTION: "T" |
| BRYAN A. THOMAS, SR. | * | VIOLATIONS: 18 U.S.C.§ 1343 |
| | | 18 U.S.C.§ 1956 |
| | | (a)(1)(A)(i) |

\* \* \*

## FACTUAL BASIS

Should this matter proceed to trial, the government would prove the following through competent evidence and testimony:

A representative of Bank One located in New Orleans, Louisiana, would testify that BDT Asset Management, L.L.C. ("BDT") located at 1425 Broad Street, Suite 200, New Orleans, Louisiana, was a company owned by the defendant **BRYAN ANTHONY THOMAS, SR.**, which had an account at Bank One. Bank One was a financial institution, the deposits of which were insured by the Federal

1

____ Fee_____
____ Process_____
_X_ Dktd_____
_/_ CtRmDep_____
____ Doc.No._____

Exhibit B

Deposit Insurance Corporation. It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

A representative of U.S. Bank located in Reno, Nevada would testify that BDT had an account U.S. Bank. U.S. Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

A representative of Hibernia National Bank located in New Orleans, Louisiana, would testify that BDT had an account at Hibernia. Hibernia was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. It was a financial institution which engaged in, and the activities of which affected, interstate commerce.

Individuals hereafter collectively referred to "Investors" would testify that **BRYAN ANTHONY THOMAS, SR.**, duped them into signing fraudulent and fictitious contracts involving financial investments with him through his company BDT. That from April 1998 through August 2000, **BRYAN ANTHONY THOMAS, SR.**, devised a scheme to defraud Investors by means of false and fraudulent pretenses, representations, and promises, in connection with his promotion as an investment counselor as described in the fictitious contracts

2

between BDT and Investors. Thomas required each Investor to sign a document titled "Deposit Agreement (Capital Funding Program)" which contained the following material false statements, representations and promises:

    a.    Investors monies were to provide a funding source for project funding and the profit on the project would be generated by the defendant.

    b.    The defendant represented that he had specialized expertise to successfully place funds for trade.

    c.    The defendant represented that the Investors' funds would be wired into his Escrow Account and that this Escrow Account would at all times maintain a balance equal to the Investors' principal.

    d.    That a "Bank Guarantee" existed that equaled 106% of the Investors' principal. Additionally, should the "Bank Guarantee" be cashed out, the Investors would receive additional earnings on a pro rata basis.

    e.    Investors were guaranteed a ten (10%) percent interest rate return on their investment each month which would be paid to them per trading cycle.

    f.    The Investors' first profit return would be on or before the expiration of thirty (30) "International Banking Days."

In addition to what was outlined in the Deposit Agreement, the Investors would further testify that **BRYAN ANTHONY THOMAS, SR.,** made oral material misrepresentations to induce them to sign the bogus Deposit Agreement and invest funds with his company. Such misrepresentations included the following:

a. The defendant was the funds manager of the "Capital Funding Program" which involved the buying and selling of medium-term notes or corporate bonds. Medium-term notes would be traded to create profits. Profits would be passed to the Investors.

b. The defendant conducted two and one-half years of due diligence on the "Capital Funding Program."

c. The Investors' principal was guaranteed and protected.

d. All interest payments had been made and were current.

e. The trading in medium-term notes and corporate bonds was safe and secure.

f. The Investors could get their principal back anytime (with three days notice).

Based upon these assurances that their money would be safe, Investors would tesfity that they gave **BRYAN ANTHONY THOMAS, SR.,** money totalling approximately $7 million. Some Investors would further testify that they then received from BDT, funds purportedly

4

representing interest payments based on a fictitious "trading cycle". However, other Investors would testify that they did not receive any purported interest payments.

All the Investors would testify that **BRYAN ANTHONY THOMAS, SR.** did not inform them that he had diverted their funds to his personal use in the form of cash and purchases of items including, but not limited to, automobiles, clothing, jewelry and real estate.

A special agent with the Federal Bureau of Investigations would testify that he has conducted an analysis of the banking records of BDT and has determined that the Escrow Account (BDT) did not maintain a balance equal to the Investors' principal at all times as promised in the Deposit Agreement. He further determined that no funds were wired to anyone for investment purposes. In fact the analysis shows that Bryan Thomas used the funds for his own personal use through the purchase of clothing, jewelry, cars, property, and entertainment.

The Special Agent would further testify that there was no "trading cycle" and **BRYAN ANTHONY THOMAS, SR.** was simply using new Investors' money to make the interest payments to other Investors in order to create the appearance that the Investors were actually earning 10% interest a month on their principal investments. He would testify that this is called a "Ponzi Scheme."

5

That he used the funds to promote the wire fraud scheme set forth in the indictment and that the bank records reflect that the Investors deposited approximately $7 million dollars in the scheme.

The Special Agent would testify that beginning on or about July 29, 1999, and continuing until August 17, 1999, **BRYAN ANTHONY THOMAS, SR.** knowingly and willfully executed and attempted to execute a scheme and artifice to defraud Bank One. That on the dates listed below, the defendant caused to be deposited into Bank One, account number 1574917025, worthless checks, in the below listed amounts, all drawn on account number 153790085515 at U.S. Bank in Reno, Nevada:

| Date | Amount worthless deposit |
| --- | --- |
| July 29, 1999 | $ 50,000.00 |
| August 2, 1999 | $ 65,000.00 |
| August 13, 1999 | $ 147,500.00 |
| August 17, 1999 | $ 150,000.00 |
| Total | $ 412,500.00 |

A review of the bank records reveal that the defendant withdrew money out of Bank One, account 1574917025, based on the above listed deposits, knowing that there were insufficient funds to cover the withdrawals.

The Special Agent would testify that beginning on or about July 14, 1998, the defendant transferred through checks, debit memos and wire transfers approximately $3,852,495.36 from Bank One and Hibernia Bank knowing that the $3,852,495.36 represented the proceeds of some form of unlawful activity (the wire fraud set forth in paragraph B of Count 1), and that these financial transactions affected interstate commerce and were sent to Investors bank accounts with the intent to promote the carrying on of the Ponzi Scheme outlined in Count 1 by lulling the Investors in connection with the scheme.

The Special Agent would further testify that the amount of loss to the victims of the Ponzi Scheme was approximately $3,092,004.64.

The Special Agent would testify that from April 22, 1999, to June 19, 2000, the defendant wired approximately $2.6 million from Bank One and Hibernia in New Orleans, Louisiana to Investors.

Also introduced into evidence would be the documents provided to each Investor, all the bank statements and supporting data for the bank accounts listed in the Indictment and documentation reflecting proof of the purchases of real property with proceeds from the scheme.

_____  
BRYAN ANTHONY THOMAS, SR.

_____  
MICHAEL S. ZERLIN, ESQ.

1/31/01  
DATE

1/31/01  
DATE

7