FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 26  AM11: 33

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 00-287
                                            C.A. 05-1831

BRYAN A. THOMAS, SR.                        SECTION "F"

## J U D G M E N T

For the written reasons of the Court on file herein, accordingly;

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment denying

petitioner's Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence.

New Orleans, Louisiana, this 26th day of August, 2005.

UNITED STATES DISTRICT JUDGE

_____ Fee _____
_____ Process _____
__✓__ Dktd _____
__✓__ CtRmDep. _____
_____ Doc. No _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 26  AM 11: 33

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 00-287
                                            C.A. 05-1831

BRYAN A. THOMAS, SR.                        SECTION "F"

## O R D E R

The Court has determined that due to clerical error, the judgment dated June 22, 2005,

should be vacated. Accordingly:

IT IS ORDERED that the Judgment dated June 22, 2005, is hereby vacated, set aside and

revoked.

New Orleans, Louisiana, this _26th_ day of August, 2005.


UNITED STATES DISTRICT JUDGE

Fee_____
Process_____
X  /Dktd_____
✓  CtRmDep_____
Doc. No_____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT BE...

2005 JUN 22 I A II: 20

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 00-287

BRYAN ANTHONY THOMAS, SR.                   SECTION "F"


## ORDER AND REASONS

Before the Court is Bryan Anthony Thomas, Sr.'s Motion under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  For

the reasons that follow, the defendant's motion is DENIED.

### Background

In January 2001, the defendant pled guilty in Section "T" of

this court to one count of wire fraud and one count of money

laundering. In connection with this plea, the government dismissed

one count of bank fraud and 158 counts of money laundering.

The plea agreement included the following appellate waiver:

> The defendant hereby expressly waives the right to appeal
> his sentence on any ground . . . and the defendant
> further agrees not to contest his sentence in any post-
> conviction proceeding, including but not limited to a
> proceeding under Title 28, United States Code, Section
> 2255. The defendant, however, reserves the right to
> appeal the following:
>     a. Any punishment imposed in excess of a statutory
> maximum, and
>     b. Any punishment to the extent it constitutes an
> upward departure from the guideline range deemed most
> applicable by the sentencing court.

1

In July 2001, Section "T" of this court sentenced the defendant to 60 months imprisonment as to the wire fraud count and 97 months imprisonment as to the money laundering count, the sentences to run concurrently.

The defendant now seeks to vacate his sentence.

## I.

"[A] defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary." United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). This requires that the defendant "know that he had a right to appeal his sentence and that he was giving up that right." United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994) (quoting United States v. Melancon, 972 F.2d 566, 568 (5th Cir. 1992)) (internal quotes omitted).

In certain limited circumstances, however, a defendant can avoid his waiver of appeal. An ineffective assistance of counsel claim may survive the waiver of appeal, if the claim directly addresses the voluntariness of the waiver or the validity of the plea. See United States v. White, 307 F.3d 336, 337 (5th Cir. 2002). A defendant can also avoid a waiver of appeal if the government breaches the plea agreement. See United States v. Gonzalez, 309 F.3d 882, 886 (5th Cir. 2002).

## II.

The defendant has articulated no claims that survive his waiver of appeal, and has presented no evidence that his plea and

2

waiver of appeal were not knowing and voluntary. Accordingly, his motion under § 2255 must be denied.

The defendant's plea and waiver of appeal were knowing and voluntary. The defendant contends that they were not knowing and voluntary because he pled and waived his appeal rights before he knew what his sentence would be. However, as long as the defendant is aware of the maximum sentence that he could receive, as he was, then he is aware of the consequences of his guilty plea. See United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990). The defendant's plea agreement contained the following paragraph: "The defendant further understands that the maximum penalty he may receive if his plea of guilty is accepted is 5 years imprisonment, a fine, or both as to count 1; and 20 years imprisonment as to count 3, a fine or both." The plea agreement also stated that the defendant "fully understands the terms of this agreement."

The defendant knowingly and voluntarily signed a plea agreement that contained a waiver of appeal. The fact that the defendant waived his appeal rights prior to receiving his sentence is of no importance. The defendant was aware of the sentence that he could receive. See id. The circumstances of the defendant's waiver of appeal have already been examined by the Fifth Circuit, which concluded that the waiver was knowing and voluntary. See United States v. Thomas, No. 01-30905, 2002 WL 493913, at *1 (5th Cir. Mar. 11, 2002). The defendant's plea agreement required him

3

"to forego his right to relief in appeal just like this one, and he knew that when he signed it. We will therefore hold him to his word." White, 307 F.3d at 344.

The defendant has no right to this § 2255 proceeding. His sentence as to count 1 was the statutory maximum, and his sentence as to count 2 was below the statutory maximum. Both sentences were within the recommended guideline range. The defendant's plea agreement preserved his appeal rights only if his sentence exceeded the statutory maximum or constituted an upward departure from the guideline range. Those conditions are not fulfilled here.

Accordingly, the defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED.[1]

New Orleans, Louisiana, June 21, 2005.

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE

---

[1] Because the defendant's motion is denied on the waiver of appeal issue, the Court does not address the alternative arguments raised by the defendant or the Government.

4

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 22  PM 1:59

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 00-287
                                            C.A. 05-1831

BRYAN A. THOMAS, SR.                        SECTION "F"

### J U D G M E N T

For the written reasons of the Court on file herein, accordingly;

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment denying

petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

New Orleans, Louisiana, this 22 Day of June, 2005.


UNITED STATES DISTRICT JUDGE

Fee
Process
Dktd
CtRmDep
Doc. No

EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BRYAN ANTHONY THOMAS, SR.                      CRIMINAL ACTION

VERSUS                                         NO. 00-287

UNITED STATES OF AMERICA                       SECTION F

<u>ORDER AND REASONS</u>

Before the Court is Bryan Anthony Thomas, Sr.'s, Motion for Reconsideration of the Court's Order and Judgment of August 26, 2005. For the reasons that follow, the petitioner's motion is DENIED.

### **<u>Background</u>**

In January 2001, the defendant pled guilty in Section "T" of this Court to one count of wire fraud and one count of money laundering. In connection with his plea, the government dismissed one count of bank fraud and 158 counts of money laundering.

The plea agreement included the following appeals waiver:

> The defendant hereby expressly waives the right to appeal his sentence on any ground...and the defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under <u>Title 28, United States Code, Section 2255</u>. The defendant, however, reserves the right to appeal the following:
> a. any punishment imposed in excess of a statutory maximum, and
> b. any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

1

In July 2001, defendant was sentenced to 60 months imprisonment as to the wire fraud count and 97 months imprisonment as to the money laundering count, the sentences to run concurrently.

On May 11, 2005, Thomas moved to vacate his sentence under 28 U.S.C. 2255. The Court denied Thomas' petition for habeas relief on August 26, 2005.

On October 19, 2005, the defendant filed a motion for reconsideration of the Court's August 26, 2005 judgment denying habeas relief.

I.

Although the Federal Rules of Civil Procedure do not recognize a motion for reconsideration, the Fifth Circuit has held that such motions, if filed within ten days after entry of judgment, must be treated as motions to alter or amend under Rule 59(e); if filed after ten days, the Court must hold them to the more stringent standards of a Rule 60(b) motion for relief from judgment. Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990).

The Court originally issued its judgment denying petitioner's motion for habeas relief on June 22, 2005. However, the judgment of June 22, 2005 was revoked on August 26, 2005 because of a clerical error, and the Court reissued a judgment denying petitioner's motion for habeas relief on August 26, 2005. Thomas

2

filed his present motion for reconsideration on October 19, 2005.

Petitioner's motion for reconsideration was filed more than ten days after the Court's entry of judgment. However, as a result of Hurricane Katrina, Chief Judge Berrigan suspended all civil deadlines in the Eastern District of Louisiana from August 29, 2005 to November 25, 2005. Thus, because of the suspension, petitioner's motion for reconsideration is properly treated as a timely filed motion to alter or amend under Rule 59(e).

## II.

The Fifth Circuit has remarked that "a motion under Rule 60(b) is the equivalent of a second or successive habeas petition subject to the standard of section 2244(b)." Kutzner v. Cockrell, 303 F.3d 333, 338 (5th Cir. 2002); see also Fierro v. Johnson, 197 F.3d 147, 151 (5th Cir. 1999) ("Our own court and other circuit courts have decided that Rule 60(b) motions should be construed as successive habeas petitions...."). In the same vein, the petitioner's Rule 59(e) motion is properly construed as a second § 2255 motion. See United States v. Anderson, No. 95-040, 1998 WL 512991, at *1-2 (E.D. La. 1998) (petitioner's Rule 59(e) motion is properly construed as a second § 2255 motion).

In his motion, Thomas contends that his guilty plea was not knowing or voluntary because he was misinformed about the Court's ability to increase his sentence beyond the statutory maximum. Further, Thomas contends that the Supreme Court's recent decision

3

in United States v. Booker should be applied retroactively and that, if it is applied retroactively, he has the right to attack his sentence because it exceeds the statutory maximum. __ U.S. __, 125 S.Ct. 738 (2005). Thomas has already had the opportunity to challenge the validity of his conviction in his original habeas petition. As such, the Court finds it appropriate to treat this motion as successive. See Kutzner, 303 F.3d 333, 338; Anderson, 1998 WL 512991, at *2. Because Thomas has not obtained authorization from the Court of Appeals to file a successive habeas petition, the Court lacks jurisdiction to hear this motion.

Accordingly, the defendant's motion for reconsideration of judgment is DENIED.

New Orleans, Louisiana, December 15, 2005.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

4

EXHIBIT C

*page 21 $2255 Motion*
*Bryan A. Thomas, Sr.*
*# 00-287*
*C.A. 05-1831*

### Miscarriage of Justice

The denial of the above application would result in a *"miscarriage of justice"* when the Petitioner is *factually innocent* of the never admitted elements, which increased the Relevant Statutory maximum sentence. As seen in *Murry v. Carrier,* 477 U.S. 478, 496, 106 C. Ct. 2639, 2649, 91 L. Ed 2d. 397 (1986) requiring petitioner to show a constitutional violation has resulted in the conviction of one who is "actually innocent" and if such factual innocence is shown the miscarriage of justice exception functions as a gateway   permitting a habeas petitioner to have considered on the merits claim of the constitutional error that would otherwise be procedurally barred.  See *Schulp v. Delo,* 513 U.S. at 315-16, 115 S. Ct. At 861; *Herrera v. Collins,* 506 U.S. at 404, 113 S. Ct. At 862.

### CONCLUSION

For all the above fore going reasons, Petitioner prays that this Honorable Court will grant leave to file a section  2255 in the District Court to adjudicate the question presented, or in the alternative, this Court or transfer this case to the jurisdiction of petitioner's incarceration.

*page 6    §591(e) Motion*
*Bryan A. Thomas, Sr.*
*#00-287*
*C.A. 05-1831*

## Miscarriage of Justice Doctrine

Secondly, the Supreme Court in **Dretke v Haley**, 124 S.Ct.
1847(2004), recognized some of the foregoing procedural com-
plexities in addressing whether the miscarriage of justice
exception to the procedural default doctrine "applies where
an applicant asserts 'actual innocence' of a noncapital sentence."
Id. at 1849, confirming this circuits precedence in **Haley v.
Cochrell**, 306 F.3d 257(5thCir.2002); **Sones v. Hargett**, 61 F.3d
410(5thCir1995); **Smith v. Collins**, 977 F.2d 951(5thCir.1992).
The Supreme Court ultimately "declined to answer the question"
in the posture of this case and instead held that "a federal
court faced with allegations of actual innocence, whether of the
sentence or of the crime charged, must first address all non-
defaulted claims for comparable relief and other grounds for cause
to excuse the procedural default." Id, at 1852.

Because the District Court failed first to consider alter-
native grounds for relief urged by respondent's grounds that
might obviate any need to reach the actual innocence question,...
the Court vacated the judgment and remanded. Id. at 1849. Conse-
quently, this Court must address the claims set forth in the
Petitioner's § 2255 Motion first.  Before denying habeas corpus
relief under the gateway of miscarriage of justice.

## Breached or Violated Plea Agreement

The final exception which was clarified through **Booker** and
**Shepard** supra, is a clear breach of the Rule 11 Plea agreement.
When the government has breached or elected to void the plea
agreement, the defendant is necessarily released from an appeal

EXHIBIT D

BP-S288.052 INCIDENT REPORT CDFRM
MAY 1994

U.S. DEPARTMENT OF JUSTICE  FEDERAL BUREAU OF PRISONS

| 1. Name of Institution | | FCI Milan, Michigan | | Incident Report Number | |
|---|---|---|---|---|---|

## Part I – Incident Report

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| THOMAS, Bryan | 27128-034 | Friday, December 09, 2005 | 6:33 p.m. |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| Lieutenant's Office | OTC Ord | E-Unit |

| 9. Incident | Refusing to provide a urine sample | 10. Code | 110 |
|---|---|---|---|

| 11. Description of Incident | Date: 12-09-2005 | Time: 6:33 p.m. | Staff became aware of Incident |
|---|---|---|---|

On Friday, December 09, 2005, at 4:33 p.m., inmate Thomas, Bryan, Reg. No. 27128-034 was notified he needed to provide an Urine Sample within two hours. Inmate Thomas was afforded water during this two hour period. At 6:33 p.m., inmate Thomas had failed to provide an Urine Sample as instructed.

| 12. Signature of Reporting Employee | Date and Time | 13. Name and Title (Printed) | |
|---|---|---|---|
| | 12-09-2005 6:34 P.M. | H. Baugher Correctional Officer | |
| 14. Incident Report Delivered To Above Inmate By: | | 15. Date Delivered | 16. Time Delivered |
| | | | |

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | FCI Milan | | | | |
|---|---|---|---|---|---|
| INMATE NAME | THOMAS, Bryan | INCIDENT REPORT NUMBER | | | 1410447 |
| DATE OF INCIDENT | 12-09-2005 | REG NO | 27128-034 | UNIT | A-1 |
| OFFENSE / CHARGES | Refusing to Provide a Urine Sample, Code 110 | DATE OF INCIDENT REPORT | | | 12-09-2005 |

## I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on date/time by:　　　12-09-2005 @ 6:35 p.m. by Lt. Ellis

B. The DHO Hearing was held on　　　01-05-2006　　at (time)　　　0905

C. The inmate was advised of his/her rights before the DHO by (staff member):

P. LeGrant　　　　　on (date)　　　12-14-2005　　　　　and a copy of the advisement of rights form is attached.

## II. STAFF REPRESENTATIVE

| A. Inmate waived right to staff rep. | | Yes: | | No: | X |
|---|---|---|---|---|---|
| B. Requested staff representative appeared. | | | M. Ogozaly | | |

c. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

N/A

| D. Staff representative was appointed: | | | N/A | |
|---|---|---|---|---|

E. Statement of Staff Representative:

12-29-05: :I did not get an opportunity to check with Health Services because I was unaware of his medical condition until this point.  I will get a written statement from them for you."  1-5-06: "Provided written statement from Health Services.  He worked for me for a year in Safety and he always had clear conduct."

## III. PRESENTATION OF EVIDENCE

| A. Inmate admits: | | denies: | X | |
|---|---|---|---|---|

B. Summary of inmate statement:

I did drink water and milk during the 2 hours, but I just could not provide.  I sent the Lieutenant a cop-out saying I would provide a sample while in here (SHU), and I offered to have blood drawn to be tested for narcotics.  I take several medications for heart problems and I have had difficulty in the past providing a urine sample when told to do so.  I have had a gate pass for 9 months, I just graduated from the Life Connections Program, and I am scheduled to go to a camp soon.  I just want to get home to help my family which was devastated by Hurricane Katrina.  I have nothing to hide.

C. Witness(es):

| 1. The inmate requested witness(es). | | Yes: | X | No: | |
|---|---|---|---|---|---|

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

---

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

Murillo 16500-039 - I've known Mr. Thomas during his participation in the LCP program. I've been somewhat of a mentor to Mr. Thomas. Knowing his character and demeanor I find it hard to believe he would participate in any unlawful acts.

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable Witnesses submit written statements and those statements received were considered. | Yes | | No | | N/A | X | |
|---|---|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

memo from Mr. Zestos, (Physician's Assistance) dated 12-43-05
written statement from Dr. Matlatinski, dated 1-4-06

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

## IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. |
|---|---|
| | B. The following act(s) was committed: |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

## V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The DHO finds you committed the prohibited act(s) of Refusing to Provide a Urine Sample, code 110. This is based on the reporting staff's statement that on 12-9-05, at 1633, you were informed that you had two hours to provide a urine sample. At 1833 you had failed to provide the sample as instructed.

The DHO also relied upon as evidence, **1)** a written statement from Mr. Zestos, stating you were taking no medications that would preclude you from providing a urine sample; **2)** a written statement from Dr. Matlatinski in the form of a response to your "Inmate Request to Staff form, stating that your medication and medical problems would not stop you from providing a urine sample in accordance with policy.

You appeared before the DHO **denying** the charge, citing your medications were hindering your efforts to provide a urine sample withing the time allotted.

Your staff representative was present, acknowledged your due process rights had been afforded. He stated that he was unaware of any issues with your medications until now. Therefore in the interest of fairness, the DHO postponed your hearing to give your staff representative an opportunity to interview medical staff about your issue.

On 1-5-06, your DHO hearing was reconvened. Your staff representative provided the aforementioned documents from Mr. Zestos and Dr. Matlatinski, yet was unable to offer any verifiable information to help mitigate the charges against you.

Though the DHO considered the statement of your witnesses, greater weight of evidence was given to the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements.

Additionally, two staff from Health Services both state that neither your medication nor your medical condition would hinder your

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

ability to provide a urine sample in the time period set forth in policy.

Therefore, the DHO finds you committed the prohibited act(s).

## VI. SANCTION OR ACTION TAKEN

60 days DS
40 days dis. GCT
180 days loss of visiting
180 days C.S. family visits only

## VII. REASON FOR SANCTION OR ACTION TAKEN

Refusing to provide a urine sample is a serious institutional rules violation, which hampers staff's ability to monitor and control inmate use of narcotics within the institution. The sanction was imposed to punish you for your actions and hopefully deter you from this type of behavior in the future. After careful consideration of all relevant facts, the DHO imposed Loss of Privilege sanctions. Although not directly related to the offense, it is hoped the sanctions will have a significant impact on your future behavior.

## VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | Yes | X | No |
|---|---|---|---|

## IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | | Date |
|---|---|---|---|
| F.A. Bierschbach | *IAB uuibl* | | January 19, 2006 |
| Report delivered to inmate by: | *C. Dushane* | Date: | 1/23/06 |

(This form may be replicated in WP)

Replaces BP-304(52) of JAN 88

BP-S288.052 INCIDENT REPORT FORM
May 1994
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| 1. Name of Institution: | F.C.I. Milan, Mi. | Incident Report # | |

## PART I - INCIDENT REPORT

| 2. Name of Inmate THOMAS , BRYAN | 3. Register Number 27128-034 | 4. Date of Incident February 9, 2006 | 5. Time 10:20 am |
| 6. Place of Incident FCI MILAN SHU | 7. Assignment UNASSIGNED | 8. Unit A-UNIT | |

9. Incident: 1. REFUSING TO PROVIDE A URINE SAMPLE       10. Code: 110

11. Description of Incident :    Date: 2/9/06    Time: 10:20 am    Staff became aware of incident.

On the above date at 7:20am, inmate Thomas #27128-034 was told to provide a urine sample within the allotted time frame of two hours. At 9:20am. Inmate Thomas failed to provide the urine sample whereupon the Operations Lieutenant was contacted. At that time the Operations Lieutenant advised this officer to give inmate Thomas until 10:20am., an extra hour to provide the urine sample. At 10:20am. Inmate Thomas failed to provide the urine sample.

| 12. Signature of Reporting Employee | Date and Time 02-09-06  10:30am. | 13. Name and Title (printed) S.O  SADZEWICZ, EDWARD |
| 14. Incident Report Delivered to above inmate by: | 15. Date Incident Report delivered 2-0-06 | 16. Time Incident Report Delivered 7:10 PM |

## PART II - COMMITTEE ACTION

17. Comments of Inmate to Committee Regarding Above Incident

18. A. It is the finding of the Committee that you:
___ Committed the following prohibited act:
___ Did not commit a prohibited act.
B. ___ The Committee is referring the charge(s) to the DHO for further hearing
C. ___ The Committee advised the inmate of its findings and of the right to file an appeal within 15 calendar days.

19. Committee Decision is based on the following information:

20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)

21. Date and Time of Action _____ (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

Chairman (typed name/signature)    Member (typed name)    Member (typed name)

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation
(This form may be replicated via WP)

Replaces BP-288(52) of Jan. 88

D

U

BP-S305

FEDERAL BUREAU (

| INSTITUTION | FCI Milan | INCIDENT REPORT NUMBER | | | | 1432311 |
|---|---|---|---|---|---|---|
| INMATE NAME | THOMAS, Bryan | REG NO | 27128-034 | | UNIT | A-1 |
| DATE OF INCIDENT | 02-09-2006 | DATE OF INCIDENT REPORT | | | | 02-09-2006 |
| OFFENSE / CHARGES | Refusing to Provide a Urine Sample, Code 112 | | | | | |

## I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on
date/time by: 02-09-2006 @ 7:10 p.m. by Lt. Black

B. The DHO Hearing was held on    02-23-2006    at (time)        9:00 a.m.

C. The inmate was advised of his/her rights before the DHO by (staff member):

B. Brown        on (date)    02-12-2006        and a copy
of the advisement of rights form is attached.

## II. STAFF REPRESENTATIVE

| A. Inmate waived right to staff rep. | | Yes: | X | | No: | | |
|---|---|---|---|---|---|---|---|
| B. Requested staff representative appeared. | | | N/A | | | | |

c. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

N/A

| D. Staff representative was appointed: | | N/A | |
|---|---|---|---|
| E. Statement of Staff Representative: | | | |

N/A

## III. PRESENTATION OF EVIDENCE

| A. Inmate admits: | | denies: | X | |
|---|---|---|---|---|
| B. Summary of inmate statement: | | | | |

Statement of 02-16-06: I attempted to provide a sample. I have problems urinating while under direct supervision. I was able to provide yesterday while locked up in SHU because the Captain let me take my time. Provided written statement.

(Continued 02/23/06) As I mentioned before, the Warden said she was going to assist me with my appeal. I attempted to provide a sample. I drank a lot of water, I was stripped, I was shaking. I appreciate the Captain letting me provide in a more comfortable environment. This has caused me a lot of stress and anguish. I clam up. I was shaking. I tried everything I could. I have a problem being watched by staff. I have provided a sample the day before my last hearing, and again on Monday. I had the same problem. But, they put me in the shower and let me walk, so I was able to provide after about 2 - 2½ hours.

C. Witness(es):

| 1. The inmate requested witness(es). | | Yes: | X | No: | | |
|---|---|---|---|---|---|---|

Page 1 of 3

D
U

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

---

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

Smith 06828-424 - I don't know nothing about him not providing a urine sample. I thought I was here to talk about his work performance and his character. From what I know of this individual is that he is effective in his job duties, and he is a good person to be interacting with on a day to day basis. He is someone I could learn from, he is positive in his work, his speech, and he is always helping other people. I didn't know him before I came here, but he is someone I would like to keep in touch with after we leave. In parting, I would like to say that two people with positive character breeds positive.

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable Witnesses submit written statements and those statements received were considered. | Yes | No | N/A | X | |
|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and investigation, the DHO considered the following documents:

N/A

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

**IV. FINDINGS OF THE DHO**

| X | A. The act was committed as charged. |
|---|---|
| | B. The following act(s) was committed: |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The DHO finds you committed the prohibited act(s) of Refusing to Provide a Urine Sample, code 110. This is based on the reporting staff's statement that on 2-9-06, at approximately 0720, you were told to provide urine sample. At 0820 you still had not provided the sample as required. The reporting staff gave you an additional hour, yet you still failed to provide the sample.

You appeared before the DHO denying the charge. On 2-16-06 you stated that you attempted to provide a urine sample, but had difficulty urinating while under direct supervision. You stated that you were able to provide on 2-15-06 while locked up in SHU because the Captain let you take your time. In the interest of fairness, your DHO hearing was postponed, pending discussion with the Captain and results from this urine test.

During a discussion with the captain, she stated that her office received a urine bottle from you, wrapped in a "cop out" (Inmate Request to Staff). She stated that neither the sample nor the means by which the sample was taken were consistent with policy. Therefore the sample was voided.

Accordingly, your DHO hearing was reconvened on 02/23/06. You continued to assert issues with urinating in front of staff, however noted that you provided yet a third urine sample after sufficient accommodation was made. Discussion with the Captain revealed that you in fact had not provided any other sample, other than the one delivered to her office.

The DHO however, also relied upon as evidence, a memo from Ms. Wertenberger, stating SIS records show you have provided several urine samples in the past with no difficulty.

D
U

BP-S305 052 MAY 94<br>FEDERAL BUREAU OF PRISONS

The DHO also reviewed your written statement, however, gave greater weight of evidence to the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements.

Additionally, you have provided urine samples in the past with no difficulty

Therefore, the DHO finds you committed the prohibited act(s).

## VI. SANCTION OR ACTION TAKEN

60 Days Disciplinary Segregation
40 Days Disallow Good Conduct Time
30 Days Forfeit Non-Vested Good Conduct Time
365 Days Loss of Visiting Privileges
365 Days Visiting With Immediate Family Only

## VII. REASON FOR SANCTION OR ACTION TAKEN

Refusing to provide a urine sample is a serious institutional rules violation, which hampers staff's ability to monitor and control inmate use of narcotics within the institution. The sanctions were imposed to punish you for your actions and hopefully deter you from this type of behavior in the future. The increase in sanctions and loss of visiting privileges is in response to your continued recalcitrance. Although not directly related to the offense, it is hoped the privilege restrictions will have a significant impact on your future behavior.

## VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | Yes | X | No | | |
|---|---|---|---|---|---|

## IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| F.A. Bierschbach | _I.A.B._ | February 24, 2006 |

| Report delivered to inmate by: | C. Dusham | Date: 3/2/06 |
|---|---|---|

(This f

Replaces BP-304(52) of JAN 88

EXHIBIT E

application of procedural rules." Where the matter is one of "innocence or guilt," these rulings "are more accurately characterized as Substantive rules not subject to the *Teague* bar." *Summerlin, supra,* 124 S. Ct. at 2523, n. 4, accord *Beard v. Banks,* 124 S. Ct. 2504, 2510, n. 3 (2004) ("Rules that fall within what we have referred to as *Teague's* first exception are more accurately characterized as substantive rules not subject to *Teague's* bar.

## Pre-*Bousley* Analysis

The majority of the District and Appellate Courts, pre-*Bousley,* prudently anticipated this reasoning and determined that *Bailey* applies retroactively under 28 U.S.C. § 2255. The Fifth Circuit found in *United States v. Andrade,* 83 F.3d 729, 730, n. 1 (*per curiam*) (suggest *in dictum,* that application of *Bailey* in collateral proceedings not barred under *Teague v. Lane*); other jurisdictions also have held (raising *Bailey sua ponte* and holding was not barred by law of the case doctrine despite ruling of prior Ninth Circuit panel (*United States v. Garcia,* 77 F.3d at 276-77 (1996)); (*Rodriguez v. United States,* 933 F.S. 279, 281 (1996) (defendant not procedurally barred from raising *Bailey* in successive § 2255 because *Bailey* effected a change in the substantive meaning of a criminal statute); (*Alton v. United States,* 928 F.S. 885, 887 (E.D. MO. 1996) (*Bailey* claims are not procedurally barred though not raised on direct appeal); (*Warner v. United States,* 926 F.S. at 1391, n. 5 (E.D. Ark. 1996)) (*Bailey* is retroactive under *Davis v. United States,* 417 U.S. 333, and retroactivity is not grounded by *Teague*).

## Post-*Bousley* Analysis

Post-*Bousley* retroactive applications of substantive "new rule" cases of the Supreme Court are now more defined by the District and Appellate Courts and are being resolved without Supreme Court intervention. Examples can be found in the retroactive application of *Richardson v. United States,* 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999); and *Jones v. United*

(EXHIBIT E)   #00-287
C.A. 05-1831
pgs. 8, 9, 10 & 2255 Motion

*States*, 529 U.S. 848, 120 S. Ct. 1904, 146 L. Ed. 2d 902 (2000) (the decision in *Jones* "has

substantially changed the law of the Eight Circuit regarding the reach of § 844(i) (*United States*

*v. Rea*, 223 F.3d 741, 743) (also holding *Teague* does not apply in those cases in which the Court

determines the meaning of a criminal statute enacted by Congress, because such a decision

involves the Substantive reach of a federal statute, not a rule of criminal procedure) (*United*

*States v. Ryan*, 227 F.3d 1062-1063).

       In *United States v. Lopez, supra* at 432, the Fifth Circuit found that the Supreme Court's

interpretation of a statute (*Richardson*) is retroactively available on collateral review). *See also,*

*Murr v. United States*, 200 F.3d 895 (6th Circuit) (*Richardson* involves substantive construction

of a criminal statute); *United States v. Barajas-Diaz*, 313 F.3d at 1254 (10th Cir. 2002) (agreeing

with "every circuit court that has considered the issue" that *Teague* doctrine does not apply to the

Court ruling in *Richardson* that Federal continuing criminal enterprise statute requires that jury

"unanimously agree not only that the defendant committed some series of violations" but also

that the defendant committed each of the individual "violations" necessary to make up that

"continuing series"); *Lanier v. United States*, 220 F.3d at 838 (7th Cir.) (*Richardson* simply

articulated the meaning of "continuing series of violations" in § 848, and *Teague* is inapt here

where we interpret a criminal statute); *Ross v. United States*, 289 F.3d 677 (11th Cir. 2002)

(*Richardson* court changed the elements of a CCE offense, and, thus, changed the meaning of

that statute); *United States v. Ryan*, 727 F.3d at 1062 (2000) (*Teague* does not apply in those

cases in which the Court determines the meaning of a criminal statute enacted by Congress,

because such a decision involves the substantive reach of a federal statute, not a rule of criminal

procedure); *Santana-Madera v. United States*, 260 F.3d 133 (2nd Cir. 2001) (held, the *Richardson*

Court has instructed that the new rules are substantive when they alter the meaning of a criminal

statute enacted by Congress such that the defendant stands convicted for conduct that may no longer be illegal).

**Substantive Changes in Law**

The *Booker* and *Shephard* Court rejected the government's argument to hold to the *Rule of Stare Decisis* (see *Booker* Majority Opinion, pp. 15 17; *Shephard* Majority Opinion, p. 9), but held in both instances that "Congress remains free to alter what we have done" in light of the statutory interpretation. *Id.*

The invalidation of the judicial authority of ***sentencing factor findings*** not within the Sixth Amendment protections under §§ 3553(b)(1) and 3742(e) have now invalidated prior Supreme Court precedents falling outside of the power of Congress' power to enact rendering those findings voidable. The Petitioner recognizes a judicial construction of the case giving raise to the fact that construction of a statute's meaning applies to what it meant before as well as after the decision of the case, giving raise to that construction. *Rivers v. Roadway Express*, 128 L. Ed. 2d 274, 289 (1994).

However, it appears that Congress has not just over-stepped Constitutional bounds. Congress, within the United States Sentencing Guidelines (U.S.S.G.), has ignored prior Supreme Court "due process" precedent. For example in *Spencer V. Texas*, 385 U.S. 583 (1967), the Supreme Court held:

> If the admission of prior-convictions evidence solely for the purpose of enhancing punishment in the event a defendant is found guilty violates due process when the defendant is not given the right of ***conceding*** the prior-convictions evidence to prevent its admission, petitioner's convictions . . . must be reversed."

*Id. (emphasis added).*

EXHIBIT E

application of procedural rules." Where the matter is one of "innocence or guilt," these rulings "are more accurately characterized as Substantive rules not subject to the *Teague* bar." *Summerlin, supra,* 124 S. Ct. at 2523, n. 4, accord *Beard v. Banks,* 124 S. Ct. 2504, 2510, n. 3 (2004) ("Rules that fall within what we have referred to as *Teague's* first exception are more accurately characterized as substantive rules not subject to *Teague's* bar.

## Pre-*Bousley* Analysis

The majority of the District and Appellate Courts, pre-*Bousley,* prudently anticipated this reasoning and determined that *Bailey* applies retroactively under 28 U.S.C. § 2255. The Fifth Circuit found in *United States v. Andrade,* 83 F.3d 729, 730, n. 1 (*per curiam*) (suggest *in dictum,* that application of *Bailey* in collateral proceedings not barred under *Teague v. Lane*); other jurisdictions also have held (raising *Bailey sua ponte* and holding was not barred by law of the case doctrine despite ruling of prior Ninth Circuit panel (*United States v. Garcia,* 77 F.3d at 276-77 (1996)); (*Rodriguez v. United States,* 933 F.S. 279, 281 (1996) (defendant not procedurally barred from raising *Bailey* in successive § 2255 because *Bailey* effected a change in the substantive meaning of a criminal statute); (*Alton v. United States,* 928 F.S. 885, 887 (E.D. MO. 1996) (*Bailey* claims are not procedurally barred though not raised on direct appeal); (*Warner v. United States,* 926 F.S. at 1391, n. 5 (E.D. Ark. 1996)) (*Bailey* is retroactive under *Davis v. United States,* 417 U.S. 333, and retroactivity is not grounded by *Teague*).

## Post-*Bousley* Analysis

Post-*Bousley* retroactive applications of substantive "new rule" cases of the Supreme Court are now more defined by the District and Appellate Courts and are being resolved without Supreme Court intervention. Examples can be found in the retroactive application of *Richardson v. United States,* 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999); and *Jones v. United*

8

*States*, 529 U.S. 848, 120 S. Ct. 1904, 146 L. Ed. 2d 902 (2000) (the decision in *Jones* "has substantially changed the law of the Eight Circuit regarding the reach of § 844(i) (*United States v. Rea*, 223 F.3d 741, 743) (also holding *Teague* does not apply in those cases in which the Court determines the meaning of a criminal statute enacted by Congress, because such a decision involves the Substantive reach of a federal statute, not a rule of criminal procedure) (*United States v. Ryan*, 227 F.3d 1062-1063).

In *United States v. Lopez, supra* at 432, the Fifth Circuit found that the Supreme Court's interpretation of a statute (*Richardson*) is retroactively available on collateral review). *See also, Murr v. United States*, 200 F.3d 895 (6th Circuit) (*Richardson* involves substantive construction of a criminal statute); *United States v. Barajas-Diaz*, 313 F.3d at 1254 (10th Cir. 2002) (agreeing with "every circuit court that has considered the issue" that *Teague* doctrine does not apply to the Court ruling in *Richardson* that Federal continuing criminal enterprise statute requires that jury "unanimously agree not only that the defendant committed some series of violations" but also that the defendant committed each of the individual "violations" necessary to make up that "continuing series"); *Lanier v. United States*, 220 F.3d at 838 (7th Cir.) (*Richardson* simply articulated the meaning of "continuing series of violations" in § 848, and *Teague* is inapt here where we interpret a criminal statute); *Ross v. United States*, 289 F.3d 677 (11th Cir. 2002) (*Richardson* court changed the elements of a CCE offense, and, thus, changed the meaning of that statute); *United States v. Ryan*, 727 F.3d at 1062 (2000) (*Teague* does not apply in those cases in which the Court determines the meaning of a criminal statute enacted by Congress, because such a decision involves the substantive reach of a federal statute, not a rule of criminal procedure); *Santana-Madera v. United States*, 260 F.3d 133 (2nd Cir. 2001) (held, the *Richardson* Court has instructed that the new rules are substantive when they alter the meaning of a criminal

Bryan A. Thomas,
#00-287
C.A. 05-1831
(EXHIBIT E)    pages 8,9,10
§2255 Motion

statute enacted by Congress such that the defendant stands convicted for conduct that may no longer be illegal).

**<u>Substantive Changes in Law</u>**

The *Booker* and *Shephard* Court rejected the government's argument to hold to the *Rule of Stare Decisis* (see *Booker* Majority Opinion, pp. 15 17; *Shephard* Majority Opinion, p. 9), but held in both instances that "Congress remains free to alter what we have done" in light of the statutory interpretation. *Id.*

The invalidation of the judicial authority of *sentencing factor findings* not within the Sixth Amendment protections under §§ 3553(b)(1) and 3742(e) have now invalidated prior Supreme Court precedents falling outside of the power of Congress' power to enact rendering those findings voidable. The Petitioner recognizes a judicial construction of the case giving raise to the fact that construction of a statute's meaning applies to what it meant before as well as after the decision of the case, giving raise to that construction. *Rivers v. Roadway Express*, 128 L. Ed. 2d 274, 289 (1994).

However, it appears that Congress has not just over-stepped Constitutional bounds. Congress, within the United States Sentencing Guidelines (U.S.S.G.), has ignored prior Supreme Court "due process" precedent. For example in *Spencer V. Texas*, 385 U.S. 583 (1967), the Supreme Court held:

> If the admission of prior-convictions evidence solely for the purpose of enhancing punishment in the event a defendant is found guilty violates due process when the defendant is not given the right of *conceding* the prior-convictions evidence to prevent its admission, petitioner's convictions . . . must be reversed."

*Id. (emphasis added).*

10